IN THE SUPREME COURT OF THE STATE OF DELAWARE

TASHA MILLMAN,[1]     §
    § No. 500, 2025
      Respondent Below,     §
      Appellant,     § Court Below–Family Court
    § of the State of Delaware
      v.     §
    § File No. 25-09-3TK
DEPARTMENT OF SERVICES     § Petition No. 25-21721
FOR CHILDREN, YOUTH AND     §
THEIR FAMILIES,     §
    §
      Petitioner Below,     §
      Appellee.     §

Submitted: April 16, 2026
Decided: May 15, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses thereto, and the Family Court record, it appears to the Court that:

(1) By order dated November 26, 2025, the Family Court terminated the parental rights of the appellant, Tasha Millman ("Mother"), in her son, born in May 2024 (the "Child").[2] Mother appeals.

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

[2] The Family Court's order also terminated the parental rights of the Child's father. We refer only to facts in the record that relate to Mother's appeal.

(2)     On appeal, Mother's counsel has filed an opening brief and a motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother has submitted a narrative for the Court's consideration. The Delaware Department of Services for Children, Youth and Their Families ("DSCYF") as the appellee and the Child's attorney from the Office of the Child Advocate have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     On November 25, 2024, DSCYF petitioned for emergency custody of the Child after learning that Mother, who was on probation, had been discharged from the sober living home where she had been staying because of her erratic behavior and failure to supervise the Child. Mother's lack of supervision led to the Child—then six months old—rolling off of Mother's bed on at least two occasions.

(4)     With the filing of DSCYF's dependency-and-neglect petition, the mandated hearings ensued.[3] At the preliminary protective hearing, Mother stipulated

---

[3] When a child is removed from his home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

that the Child was dependent in her care because she lacked stable housing and waived her right to an adjudicatory hearing.

(5) At the January 15, 2025 dispositional hearing, the court reviewed with Mother the case plan that DSCYF had developed to facilitate her reunification with the Child. Mother's case plan required her to: (i) comply with the terms of her probation; (ii) undergo a substance abuse evaluation, follow all treatment recommendations, and submit to random urine screens; (iii) complete a parenting course and attend the Child's medical appointments; (iv) obtain and maintain stable income and housing; and (v) visit regularly and appropriately with the Child. Since the last hearing, the Child had been diagnosed with failure to thrive and had been hospitalized for one week after refusing food and vomiting blood. Further testing had been ordered.

(6) As of the February 26, 2025 three-month review hearing, Mother had completed a substance abuse evaluation and was consistently testing negative for illegal substances. Mother had also enrolled in a 14-week parenting course, had submitted multiple job applications, and was enjoying appropriate visits with the Child. However, Mother lacked stable housing and was staying at a hotel. Since the last hearing, the Child had lost weight and had been hospitalized twice. He was now being fed via a Nasal Gastric feeding tube.

(7)     As of the April 1, 2025 six-month review hearing, Mother was compliant with the criminal, substance-abuse, and parenting-class components of her case plan. However, she not yet secured employment and was once again homeless after the cold-weather shelter where she had been staying closed for the season. The Child was to have a Gastric feeding tube ("G-tube") surgically implanted later in April.

(8)     The Family Court held a nine-month review hearing on June 24, 2025. Mother was compliant with the criminal and substance-abuse components of her case plan and had started working at a chicken plant. But Mother was unable to pass the parenting course's final assessment, scoring lower than she had on the initial assessment. And Mother lacked stable housing: she had been evicted from a homeless shelter and was staying at a hotel. The Child had the G-tube implanted in April, had been placed in a new foster home that was better equipped to meet his medical needs, and was gaining weight.

(9)     Before the September 16, 2025 permanency hearing, DSCYF moved to change the permanency goal from reunification to termination of parental rights ("TPR") for the purpose of adoption. As of the permanency hearing, Mother had been discharged successfully from probation, remained complaint with the substance-abuse component of her case plan, and was on track to complete a second parenting course. But Mother had been fired from the chicken plant, was living in a

4

pallet village where children were not allowed, and did not have any means of transportation. The Family Court emphasized to Mother that she would need to secure stable employment, obtain housing that could accommodate the Child and his medical needs, and demonstrate that she could meet the Child's medical needs before the Child could be returned to her. At the conclusion of the hearing, the Family Court changed the permanency goal from reunification to the concurrent goals of reunification and TPR for the purpose of adoption. On September 25, 2025, DSCYF moved to terminate Mother's parental rights for her failure to plan for the Child's physical needs or mental and emotional health and development.[4]

(10) At the November 26, 2025 TPR hearing, the Family Court heard testimony from Mother, one of the Child's treating physicians, the program manager for Mother's parenting course, Mother's DSCYF treatment worker's supervisor, the Child's foster mother, and the Child's court-appointed special advocate. The evidence fairly established that Mother had, admirably, completed the substance-abuse component of her case plan and maintained sobriety. But Mother was not employed and did not have stable housing—she moved in with a friend three weeks before the TPR hearing. Mother candidly acknowledged that she: (i) did not know what medications the Child was prescribed or what therapies he received at daycare;

---

[4] When a child comes into DSCYF custody as an infant, DSCYF may file a TPR petition after the child has been in DSCYF custody for six months. 13 *Del. C.* § 1103(a)(5)(b).

(ii) would need help administering the Child's feedings through the G-tube; (iii) did not have family help or a support system; and (iv) had not made arrangements for the Child to go to daycare in the event that her efforts to find employment were successful. At the conclusion of the hearing, the Family Court granted DSCYF's TPR petition. This appeal followed.

(11) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[5] We review legal rulings *de novo*.[6] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[7] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[8] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(12) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[10] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] When the statutory basis for termination is failure to plan, the Family Court must

---

[5] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[6] *Id*. at 440.
[7] *Id*.
[8] *Id*.
[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[11] *Id*. at 537.

also find proof of at least one additional statutory condition.[12] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's best interest.[13] Both of these requirements must be established by clear and convincing evidence.[14]

(13)   Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Mother's parental rights was appropriate because of her failure to plan[15] and that the Child had been in DSCYF custody for more than six months.[16] The Family Court also found, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interest.

(14)   In the narrative that Mother has submitted for the Court's consideration, Mother claims that she is now receiving unemployment benefits and that she has secured a place to live that is suitable for her and the Child. To the extent that Mother argues that the Family Court should not have terminated her parental rights because she satisfied the housing and income components of her case plan *after* the TPR

---

[12] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

[13] *Shepherd*, 752 A.2d at 536-37.

[14] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[15] 13 *Del. C.* § 1103(a)(5).

[16] *Id*. § 1103(a)(5)(b).

hearing, Mother was required to complete her case plan *while* the dependency-and-neglect proceedings were pending in order to be reunited with the Child. Simply put, Mother's post-TPR accomplishments, while commendable, are overdue.

(15)  Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Chief Justice